#### IN THE UNITED STATES DISTRICT COURT
#### FOR THE EASTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| **KEVIN BERNARD GREEN,** ) | |
| ) | |
| **Plaintiff,** ) | |
| v.                                          ) | **Case No. CIV-17-58-RAW** |
| ) | |
| **UNITED STATED OF AMERICA,** ) | |
| ) | |
| **Defendant.** ) | |

### REPORT AND RECOMMENDATION

The Plaintiff Kevin Bernard Greed pleaded guilty to a drug conspiracy pursuant to 21 U.S.C. §§ 841(a)(1), 841(b)(1)(B), and 846. He was sentenced to imprisonment for a a term of 132 months, followed by a term of supervised release of 60 months, as well as a $100.00 special assessment. No direct appeal was filed. Green (the plaintiff or petitioner in this case, and the defendant in Case No. CR-15-37-RAW-1, referred to herein as "the Defendant") now seeks post-conviction relief pursuant to 28 U.S.C. § 2255. The District Judge has referred the Defendant's amended petition to the undersigned Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1)(B) for an evidentiary hearing and a report and recommendation. The undersigned Magistrate Judge heard evidence on April 10, 2019. For the reasons set forth below, the undersigned Magistrate Judge now recommends that the Defendant be denied relief under 28 U.S.C. § 2255.

### FINDINGS AND ANALYSIS

In June 2015, the Defendant was charged by way of a fourteen-count indictment for a drug conspiracy (Count 1) and use of a communication device in furtherance of drug

trafficking (Counts 2-14). The indictment also contained a drug forfeiture allegation. The Defendant pleaded guilty without a plea agreement to Count 1 before United States Magistrate Judge Kimberly E. West on July 27, 2015. At the plea hearing, the Government, through Assistant U.S. Attorney Shannon Henson indicated that the Defendant's preliminary advisory Guideline calculation range was 120 months imprisonment. Defendant's counsel, Terry Weber, agreed that it was "in the realm of possibilities" despite some arguments about quantities of drugs. *See* Docket No. 5, p. 129. The Defendant indicated he understood this and provided a factual basis for his plea. *Id.*

The Defendant was sentenced by Chief U.S. District Judge Ronald A. White on January 7, 2016. Prior to sentencing, the U.S. Probation office filed a Pre-Sentence Report ("PSR"), to which the Defendant had objected. At the sentencing hearing, AUSA Henson objected to a two-point reduction for acceptance of responsibility, which the Court overruled as untimely. The Court further noted that there had not been a motion for a third point as to acceptance of responsibility, and therefore there was nothing to rule on as the motion for the third point was in the discretion of the U.S. Attorney's office. Based on this amendment, the Court found that the Defendant had a sentencing Guideline range of 97 to 121 months. *See* Docket No. 5, pp. 144-146. AUSA Henson then called two witnesses as to the Defendant's objections to the PSR. First, Willie Wartson testified that he knew the Defendant and that he would buy approximately eighteen ounces of cocaine powder from the Defendant about once a week, that he saw the Defendant with kilo quantities, and that the Defendant was his main source of supply. *Id.* at pp. 155-157. Mr. Wartson had originally provided this information during an interview on July 30, 2014, then recanted

his original statement on May 11, 2015 after learning he had been accused of being a snitch. On May 20, 2015, Mr. Wartson then recanted his recantation, affirmed his original statement, and agreed to testify at the Defendant's sentencing hearing. *Id.* at pp. 156-165. AUSA Henson confirmed with Mr. Wartson that he had agreed to file a Rule 35 motion seeking a reduction of sentence for Mr. Wartson's testimony at the Defendant's sentencing. *Id.* at pp. 172.

Next, Oklahoma Bureau of Narcotics Agent John Morrison testified that he interviewed the Defendant on October 13, 2015, and believed that the Defendant had not been truthful at that meeting. *See* Docket No. 5, pp. 175, 181. At the October 2015 meeting, the Defendant told Agent Morrison that Duran Delt was not his cocaine supplier, that he did not know the supplier for powder cocaine, and that he got it from a "middle man" named Adrianna Hill, and then he would sell it back to her and others. Agent Morrison testified that this was strange because this would make the cocaine more expensive for Ms. Hill than if she just purchased it from the supplier directly. *Id.* at p. 179. Further, the Defendant had told Agent Morrison that he did not know how to turn powder cocaine into cocaine base, and that he had never been in possession of kilo quantities of cocaine. *Id.* at p. 181. Agent Morrison stopped the interview at this point because he believed the Defendant was not being truthful. Agent Morrison believed that Duran Delt *was* the Defendant's supplier, based on an earlier interview with Mr. Wartson, facts learned in wire intercepts, and an interview with Defendant's co-conspirator Elijah Mayes. *Id.* at p. 182. He also believed the Defendant *had* sold cocaine base to Adrianna Hill, based on interviews with her and facts learned during wire intercepts. *Id.* at pp. 182-183. Finally,

he testified as to calls intercepted and that the contents of those phone calls related to Defendant selling drugs and the quality of those drugs. *Id.* at pp. 187-190.

The Defendant then testified at the sentencing hearing that he did not sell powder cocaine to Mr. Wartson in 2013, and that he believed Mr. Wartson had testified about this in retaliation for the Defendant having an affair with Mr. Wartson's girlfriend. He also testified that Duran Delt was just a good friend of his family. *Id.* at pp. 206-209. Upon cross examination, the Defendant was unable to explain why Mr. Wartson became aware of the affair in early 2014 but did not provide information as to the Defendant until July 2014, *after* Mr. Wartson's March 2014 sentencing. When confronted with statements by Elijah Mayes, Adrianna Hill, and Mr. Wartson, the Defendant asserted that they had all lied and that he had just been the middle man. Additionally, the Defendant testified that he had lied at his own change of plea hearing when he stated the amount of drugs he was responsible for. *Id.* at pp. 212-217.

Based on the evidence and testimony at the sentencing hearing, including that the Defendant lied at the Rule 11 hearing in October 2015, the Government asserted that the Defendant was not eligible for the two-level safety valve decrease. Defendant's counsel argued that Mr. Wartson's testimony should be rejected, which would have lowered the amount of powder cocaine attributed to the Defendant by 936 ounces, making the Defendant eligible for safety valve relief. *Id.* at pp. 217-218, 222. AUSA Henson then pointed out that the Defendant had lied, either at the plea hearing or at sentencing, by his own admission. *Id.* at p. 225.

The Court then found that the information provided by Mr. Wartson's testimony regarding drug quantities was relevant conduct and that the quantities were appropriately included in the drug quantity calculations in the PSR, and therefore overruled the Defendant's objections to the drug quantities. *Id.* at p. 227. The Court could not find that the Defendant met all the necessary criteria for safety valve relief, specifically the provision requiring the Defendant to truthfully provide all information and evidence to the Government concerning the offense or offenses that were part of the same source of conduct or of a common scheme or plan. The Court then overruled the Defendant's objection. *Id.* at p. 229. Finding that the Defendant lied while under oath either at the plea hearing or at the sentencing hearing, the Court then found the Defendant qualified for a two-level enhancement for obstruction of justice, resulting in a two-level enhancement from level 30 to level 32, making the Guidelines range 121 to 151 months. *Id.* at pp. 229-230. The Court then dismissed Counts 2-14 in the Indictment. The Court noted that the sentencing hearing had resulted in an unexpected increase in the offense level. Defendant's counsel noted his minimal criminal history, quick plea, and the lack of guns in the conspiracy, and argued that the mandatory minimum 120 months was sufficient. *Id.* at p. 232-233. The Court sentenced the Defendant to 132 months' imprisonment on Count 1, followed by a term of supervised release of five years. *Id.* at p. 234. At the close of the hearing, the Court instructed the Defendant that he had fourteen days to appeal his sentence, and that Mr. Weber would remain his attorney during that time. *Id.* at p. 237.

Defendant Green has raised a claim of ineffective assistance of counsel for failing to file an appeal following his plea and sentence. With regard to such a claim, Barrett must

-5-

demonstrate that the performance of his trial attorneys fell below an objective standard of reasonableness, and that he was prejudiced thereby. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). Because the Defendant asserted that he instructed his attorney to file an appeal and the Government had responded by provided an affidavit from Mr. Weber indicating that the Defendant never instructed him to file an appeal, the Court referred this matter for an evidentiary hearing.

At the evidentiary hearing, Terry Weber, the Defendant's counsel from his criminal case, was called to testify. As to his experience, Mr. Weber testified that he was licensed in Oklahoma in 1983 that his litigation practice had involved federal criminal appointments since 1995. He further testified that he has filed over fifty criminal appeals in federal courts and has argued criminal appeals before the Tenth Circuit four or five times. Mr. Weber further testified that he represented the Defendant in the 2015 underlying criminal case, that the Defendant had pleaded guilty without a written plea agreement, and that he had therefore not waived his right to appeal. Mr. Weber testified that he did not file an appeal for the Defendant, did not consult with the Defendant as to whether he wanted to appeal, and did not visit the Defendant to speak with him after the sentencing hearing. Mr. Weber testified that, while he had previously received phone calls from the Defendant's family members, neither the Defendant nor his family members contacted him after sentencing regarding the filing of an appeal. He further stated that he took no steps following sentencing to ascertain whether the Defendant want to appeal, that he did not think he had a duty to consult about an appeal, and that he did not believe there was an appellate issue. Mr. Weber testified that he generally discusses the appellate procedure with clients when

-6-

the issues come up with motions or discovery issues but had no specific recollection of those conversations with this Defendant, and he confirmed that no such conversations took place after the Defendant's sentencing hearing. On cross-examination, Mr. Weber agreed that if he had seen an appellate issue, he would have discussed that with the Defendant.

## Analysis

The Defendant's ineffective assistance of counsel claim centers on his assertion that his counsel failed to file a notice of appeal for him. Claims for ineffective assistance of counsel are governed by the standard announced by the Supreme Court and set forth in *Strickland v. Washington*, 466 U.S. 668 (1984), requiring the Defendant to "show that counsel's representation fell below an objective standard of reasonableness." *Id.* at 687. "Judicial scrutiny of counsel's performance must be highly deferential." *Id.* at 689. To prevail on a claim for ineffective assistance of counsel, the Defendant: (1) "must show that counsel's performance was deficient[,]" and (2) "that the deficient performance prejudiced the defense." *Id.* at 687.

A violation of the *Strickland* standard is clear where an attorney disregards "specific instructions from the defendant to file a notice of appeal." *Roe v. Flores-Ortega*, 528 U.S. 470, 477 (2000). A violation of *Strickland* is much less clear when the Defendant "has not clearly conveyed his wished one way or the other." *Id.* In that case, "where the defendant neither instructs counsel to file an appeal nor asks that an appeal not be taken," the Supreme Court held that the first question to be addressed is "whether counsel in fact consulted with the defendant about an appeal." *Id.* at 478. "If counsel has not consulted with the defendant, the court must in turn ask [] whether counsel's failure to consult with the

-7-

defendant itself constitutes deficient performance." *Id.* Thus rejecting a "bright-line rule," the Supreme Court instead held that "counsel has a constitutionally imposed duty to consult with the defendant about an appeal when there is reason to think either (1) that a rational defendant would want to appeal (for example, because there are nonfrivolous grounds for appeal), or (2) that this particular defendant reasonably demonstrated to counsel that he was interested in appealing." *Id.* at 480. Continuing, the Court elaborated:

> In making this determination, courts must take into account all the information counsel knew or should have known. Although not determinative, a highly relevant factor in this inquiry will be whether the conviction follows a trial or a guilty plea, both because a guilty plea reduces the scope of potentially appealable issues and because such a plea may indicate that the defendant seeks an end to judicial proceedings. Even in cases when the defendant pleads guilty, the court must consider such factors as whether the defendant received the sentence bargained for as part of the plea and whether the plea expressly reserved or waived some or all appeal rights. Only by considering all relevant factors in a given case can a court properly determine whether a rational defendant would have desired an appeal or that the particular defendant sufficiently demonstrated to counsel an interest in an appeal.

*Id.* at 480. Furthermore, "to show prejudice in these circumstances, a defendant must demonstrate that there is a reasonable probability that, but for counsel's deficient failure to consult with him about an appeal, he would have timely appealed." *Id.*

Here, the Defendant appears to alternate between asserting a failure-to-file claim and a failure-to-consult claim, which require different factual investigations. *See United States v. Roe*, 913 F.3d 1285, 1299 (10th Cir. 2019) ("The resolution of Roe's failure-to-file claim depends entirely on the answer to the following factual question: did Roe request that trial counsel file a notice of appeal on Roe's behalf? . . . A failure-to-consult claim, on the other hand, is dependent on a significantly more complex and extensive factual

milieu."). In the Defendant's § 2255 petition, he asserts that Mr. Weber failed to consult with him and failed to file a notice of appeal. In his reply, however, he asserted that he specifically instructed his attorney to file an appeal, and that Mr. Weber stated that he would. *See* Docket No. 14, p. 2. The government's Response included an affidavit from Mr. Weber stating that the Defendant had made no requests for an appeal, and this disagreement led the District Court to refer this case for an evidentiary hearing with the undersigned Magistrate Judge on the question of "whether petitioner unequivocally instructed his attorney to file a notice of appeal." *See* Docket No. 18, p.2. The uncontested testimony from the evidentiary hearing is that neither the Defendant nor any of his family members contacted Mr. Weber after the sentencing hearing regarding the filing of an appeal for the Defendant, and that there had been no discussions or instructions to do so prior to the sentencing hearing. The undersigned Magistrate Judge thus finds that the Defendant did not provide specific instructions to Mr. Weber as to the filing of an appeal, and any claim for failing to file an appeal should be denied. *See Roe*, 913 F.3d at 1299 ("The resolution of Roe's failure-to-file claim depends entirely on the answer to the following factual question: did Roe request that trial counsel file a notice of appeal on Roe's behalf? That is true because counsel's obligation to file a requested notice of appeal is absolute"), *citing Flores-Ortega*, 528 U.S. at 477 ("[A] lawyer who disregards specific instructions from the defendant to file a notice of appeal acts in a manner that is professionally unreasonable.").

The Defendant also appears to raise the issue of counsel's failure to consult with him regarding an appeal. Under the rubric of *Flores-Ortega*, the undersigned Magistrate

-9-

Judge finds that the first question – whether Mr. Weber consulted with the Defendant about an appeal – can easily be answered in the negative. Mr. Weber's own testimony was that he did not. *Flores-Ortega*, 528 U.S. at 478 ("[W]e believe the question whether counsel has performed deficiently by not filing a notice of appeal is best answered by first asking [] whether counsel in fact consulted with the defendant about an appeal."). The question then becomes whether Mr. Weber's failure to consult with the Defendant constituted deficient performance. *Id.* ("If counsel has not consulted with the defendant, the court must in turn ask a second, and subsidiary question: whether counsel's failure to consult with the defendant itself constitutes deficient performance."). For the reasons set forth below, the undersigned Magistrate Judge concludes that counsel's failure to consult does not constitute deficient performance.

"[C]ounsel has a constitutionally imposed duty to consult with the defendant about an appeal when there is reason to think either (1) that a rational defendant would want to appeal (for example, because there are nonfrivolous grounds for appeal), or (2) that this particular defendant reasonably demonstrated to counsel that he was interested in appealing." *Id.* at 480. Here, the undersigned Magistrate Judge finds that there is no evidence that the Defendant reasonably demonstrated he was interested in appeal. The remaining question, then, is whether Mr. Weber had a reason to think a rational defendant would want to appeal.

In this case, the sentencing was conducted following a plea of guilty rather than a trial. *See Flores-Ortega*, 528 U.S. at 480 ("[A] guilty plea reduces the scope of potentially appealable issues and [] such a plea may indicate that the defendant seeks an end to judicial

proceedings.")  At the plea, there was a recitation of the factual basis for his plea, and the Defendant was advised of his right to appeal at the sentencing hearing.  Mr. Weber testified at the evidentiary hearing that he believed there were no nonfrivolous grounds for appeal.  The Defendant's reply brief indicated that his arguments on appeal were the same as those arguments raised at the sentencing hearing and rejected by the District Court based on the Defendant's own lack of truthfulness.  The undersigned Magistrate Judge thus agrees that the Defendant has pointed to no nonfrivolous arguments in support of appeal.

In *Flores-Ortega*, the Supreme Court also noted that even where a Defendant pleads guilty, consideration should be given as to whether the Defendant received the sentence bargained for.  Here, the answer is slightly complicated by the events at the sentencing hearing in this case, though ultimately it is unavailing for the Defendant.  The Defendant's guilty plea was unaccompanied by a written plea agreement, and thus there was no sentenced bargained for as part of the plea.  However, the expected Guidelines range prior to sentencing was the mandatory minimum 120 months.  Based on the results of the sentencing hearing as outlined above, the Defendant's Guidelines range changed to 121-151 months based, in part, on the two-level increase for the Defendant's own obstruction of justice.  U.S. SENTENCING GUIDELINES MANUAL § 3C1.1, *Commentary* 4(F) ([Covered conduct includes] providing materially false information to a judge or magistrate judge.").  The Defendant was then sentenced to 132 months on Count One, twelve months more than was estimated going in to the sentencing hearing.  Furthermore, there is no evidence that the Defendant indicated at any time during the plea hearing or the sentencing hearing that he desired an appeal, and there is no record of the Defendant or his family members

-11-

contacting Mr. Weber regarding an appeal after the sentencing hearing. *See United States v. Sanchez[-]Calderon*, 2010 WL 11619202, at *5 (D.N.M. Dec. 9, 2010), ("The Court, however, finds that Mr. Gandert's failure to consult with Defendant was not unreasonable because there was no reason for Mr. Gandert to think that a rational defendant would want to appeal, and Defendant did not reasonably demonstrate that he was interested in appealing."), *report and recommendation adopted sub nom. United States v. Calderon*, 2011 WL 13291116 (D.N.M. Jan. 31, 2011). The undersigned Magistrate Judge thus can find no evidence that Mr. Weber would have been aware of the Defendant's desire to appeal and declines to find that Mr. Weber's conduct constituted deficient performance. [1] *Compare with Schavey v. United States*, 2017 WL 3498690, at *4 (D. Utah Aug. 15, 2017) ("First, Petitioner's case was resolved by a plea. Petitioner's plea reduced the scope of appealable issues and indicated his desire to end his case. Second, Petitioner's plea agreement contained a broad waiver of his right to appeal. Third, Petitioner received a sentence within the guideline range determined by the Court, as agreed to by the government in the plea agreement. Fourth, Petitioner has failed to point to any nonfrivolous grounds for an appeal. Presumably, Petitioner would have sought to appeal those issues raised in the instant Motion. For the reasons discussed above, those claims fail. Fifth, the Court explained Petitioner's appeal rights at sentencing. Specifically, the

---

[1] Defendant's appointed counsel at the evidentiary hearing noted that several other District Judges in the Eastern and Northern Districts of Oklahoma now require written statements by Defendants as to whether they plan to file an appeal and suggested that such a practice would have provided clarity in this case. The undersigned Magistrate Judge notes that such practice is nowhere required by the Constitution or case law, and the fact it did not occur in this case in no way establishes deficient performance on the part of Mr. Weber.

Court fully explained that Petitioner had the right to appeal, that counsel could be appointed to pursue that appeal, that he could appeal in forma pauperis, and that, if requested, the Clerk of the Court could file on appeal on his behalf. Based upon these factors, the Court finds that counsel's alleged failure to consult with Petitioner was not constitutionally deficient."). Because the undersigned Magistrate Judge has not found evidence of deficient performance, the issue of prejudice need not be reached.

## CONCLUSION

In sum, the undersigned Magistrate Judge finds that the Defendant failed to establish ineffective assistance of counsel, and that the Defendant is therefore not entitled to relief under 28 U.S.C. § 2255. Accordingly, the undersigned Magistrate Judge recommends that the Petitioner's Amended Motion pursuant to 28 U.S.C. § 2255 to vacate, set aside or correct sentence [Docket No. 5] be DENIED. Any objections to this Report and Recommendation must be filed within fourteen days. *See* 18 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b).

IT IS SO ORDERED this 25th day of April, 2019.

Steven P. Shreder
United States Magistrate Judge
Eastern District of Oklahoma